**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Erfan Zarei,<br><br>　　　　　　　Defendant. | No. CR-13-01570-PHX-NVW<br><br>**ORDER** |

Before the Court are the Government's Motion to Permit Testimony by Video Teleconference (Doc. 70) and the Response (Doc. 81). For the reasons that follow, the Motion will be granted.

Defendant was indicted in November 2013 on one count of transmitting a threat to injure or kidnap in interstate commerce. 18 U.S.C. § 875(c). After holding a competency hearing on April 15, 2014, the Court determined Defendant was then suffering from a mental disease or defect that rendered him incompetent to stand trial. (Doc. 38.) Consistent with 18 U.S.C. § 4241(d), Defendant was committed to the custody of the Federal Medical Center in Butner, North Carolina, for treatment and further evaluation. A November 2014 report authored by Dr. Alton Williams, a staff psychiatrist who treated Defendant at Butner, determined that Defendant continued to suffer from a mental disease or defect "rendering him unable to appreciate the nature and consequences of the proceedings filed against him." (Doc. 48 at 7-8.) According to Dr. Williams, however, Defendant's competency could likely be restored if he submitted to a regimen of psychotropic medications, which Defendant refuses to do. (*Id.* at 8.) The Government

subsequently requested a hearing, pursuant to *Sell v. United States*, 539 U.S. 166 (2003), to seek authority to involuntarily medicate Defendant so he can stand trial. (Doc. 66.)

After the Court set a *Sell* hearing, now scheduled for May 29, 2015, the Government filed the instant Motion, seeking permission for Dr. Williams, a Bureau of Prisons psychiatrist offered by the Government, to testify at the hearing via video teleconference. Although Butner usually has six psychiatrists on staff, Dr. Williams is currently one of only two treating psychiatrists at the facility. (Doc. 70 at 3.) Given this reduction, the Government argues that requiring Dr. Williams to appear at the hearing in person would impose a "great hardship" on him and the rest of the Butner staff. (*Id.*) Defendant objected, on the grounds that the Confrontation Clause and the Due Process Clause, as well as statutory protections applicable to *Sell* hearings, require in-person testimony.

Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right to … be confronted with the witnesses against him." U.S. Const. Amend. VI. "In the trial context, the Supreme Court has recognized that 'face-to-face confrontation forms the core of the values furthered by the Confrontation Clause.' However, the Court has also made clear that 'the right to confrontation is a *trial* right.'" *United States v. Moruzin*, Criminal No. 05-306 (JBS), 2007 U.S. Dist. LEXIS 73434, at *9 (D.N.J. Oct. 1, 2007) (emphasis in original) (citations omitted). Accordingly, "courts have repeatedly declined to hold that the Sixth Amendment right to confrontation extends to various pretrial contexts," such as a bail hearing or suppression hearing. *Id.* at *9-10 (citations omitted). It appears that, following this line of cases, no court has held the Confrontation Clause mandates in-person testimony at a *Sell* hearing. *Id.* at *11. "In view of the consistent characterization of the Sixth Amendment right to confrontation as a trial right and the absence of any authority to the contrary in the context of a <u>Sell</u> hearing, the Court concludes that [Defendant's] Sixth Amendment rights would not be implicated by permitting Dr. [Williams] to testify by video-conference at the <u>Sell</u> hearing." *Id.* at *11-12.

Unlike the Confrontation Clause, the Due Process Clause "may include the right of the defendant to cross-examine the Government's witnesses at the Sell hearing." *Id.* at *12 (citing *Vitek v. Jones*, 445 U.S. 480, 494-95 (1980)). "However, because the process that a defendant is due at a preliminary hearing 'may be less demanding and elaborate than the protections accorded the defendant at the trial itself,' the due process standard permits greater flexibility in the right to cross-examination than does the Sixth Amendment's provision for confrontation at trial." *Id.* at *12-13 (quoting *United States v. Raddatz*, 447 U.S. 667, 679 (1980)). This more accommodating due process analysis calls for consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at *13 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005)).

Defendant's personal interest in "avoiding the unwanted administration of antipsychotic drugs" is undoubtedly significant. *Id.* at *13 (quoting *Sell*, 539 U.S. at 178). But the risk that granting the Government's Motion would erroneously deprive Defendant of that interest is minimal. The Court has used video-teleconference technology in prior civil cases. This technology permits those present in court to see and hear the witness clearly and "in real time," "thereby allowing the Court to assess the witness's demeanor in addition to evaluating the substance of his testimony." *Id.* at *14 (citation omitted). In addition, because both parties have agreed to provide Dr. Williams with any anticipated exhibits in advance of the hearing, defense counsel should have no need to approach the witness in person in order to elicit testimony regarding relevant documents. In the unlikely event that either party wishes to ask Dr. Williams about documents not disclosed prior to the hearing, the Court will make arrangements to transmit copies to Butner, necessitating at worst a short delay in the proceedings.

1  "Further, unlike an eyewitness, for example, seeking to recount historical facts to a jury
2  regarding a defendant's conduct or identity, for which the crucible of cross-examination
3  is especially valuable to ascertain the truth, Dr. [Williams] will be testifying to his
4  medical opinions based upon the medical record, in which cross-examination of the
5  expert does not typically contain the same urgency of confrontation." *Id.* at *15-16.

6  As for the final prong of the due process analysis, the Government has a
7  "substantial interest in having Dr. [Williams] testify via video-conference at the hearing."
8  *Id.* at *18. Unlike the psychiatrist in *Moruzin*, Dr. Williams does not suffer from a
9  medical condition that makes it difficult to travel to and testify in court. *See id.*; *see also*
10  *United States v. Rivera-Diaz*, CR 07-1382-PHX-DGC, 2008 U.S. Dist. LEXIS 99321, at
11  *3, 8 (D. Ariz. Nov. 26, 2008) (permitting video testimony at competency hearing where
12  staff psychiatrist "suffer[ed] from a medical condition that prevent[ed] his traveling to
13  Arizona"). But requiring Dr. Williams to testify in court would nonetheless impose a
14  heavy burden on the Government. Dr. Williams is one of only two treating psychiatrists
15  currently on staff—at a facility that has traditionally employed six. Flying from North
16  Carolina to Arizona and back could consume two or three days of Dr. Williams' time,
17  leaving an already overextended Butner staff at diminished capacity in the meantime.
18  The Government, which must balance competing demands on its limited resources, is
19  entitled to a reasonable accommodation to typical in-court procedures when the
20  defendant would suffer no substantial prejudice as a result.

21  Like the *Moruzin* court—apparently the only other court to address the issue—this
22  Court is therefore inclined to "conclude that permitting Dr. [Williams] to testify by video-
23  conference would not violate [Defendant's] due process rights." 2007 U.S. Dist. LEXIS
24  73434, at *20. Ultimately, however, the Court need not resolve the issue, as defense
25  counsel indicated at oral argument on March 19, 2015, that his concerns with video
26  teleconference were largely logistical in nature. For the reasons explained above, the
27  Court is confident that video testimony will allow for relatively seamless cross-
28  examination of Dr. Williams. To the extent technological or other problems arise during

the *Sell* hearing, the Court will endeavor to resolve them quickly and without prejudice to Defendant. If the video-teleconference technology prevents clear and effective cross-examination of Dr. Williams, the Court will entertain a motion by defense counsel to adjourn the hearing until a future date on which Dr. Williams can appear in person. For these reasons, testimony by video teleconference should allow for full and adequate cross-examination that complies with both due process and statutory protections.

IT IS THEREFORE ORDERED that the Government's Motion to Permit Testimony by Video Teleconference (Doc. 70) is granted.

DATED this 20th day of March, 2015.

_____
Neil V. Wake
United States District Judge